OPINION
{¶ 1} Appellant, Patricia Stilson, appeals from a Mahoning County Common Pleas Court, Juvenile Division decision granting permanent custody of her five children to appellee, the Mahoning County Children Services Board.
 {¶ 2} Appellant has a long history with appellee. Appellee first became involved with appellant and her family in February of 1994 when it filed a complaint alleging that Richard Bicanovsky (d.o.b. 7/8/1989), Christen Stilson (d.o.b. 6/27/1990), Alyssa Stilson (d.o.b. 1/18/1992), and Justin Stilson (d.o.b. 3/31/1993) were dependent children. With appellant's approval and that of Richard Stilson,[1] the children's father, the children were placed in appellee's temporary custody. At the time, appellant admitted to drinking heavily, abusing prescription medication, and stated she was emotionally stressed and was afraid she would hurt her children. The court adjudicated the children dependent on April 21, 1994. In August 1994, on appellee's recommendation, the court granted custody to the father with visitation to appellant.
 {¶ 3} However, in September 1995, appellee moved the court to terminate the father's custody and grant custody to appellant. Appellee stated this request was based on allegations of the father sexually abusing Richard. The court subsequently found the children to be dependent again and granted appellant custody of the children with protective supervision by appellee. While in appellant's custody the family had a case plan that included counseling for all. As appellee maintained that appellant only minimally provided for her children's needs, protective supervision continued until August 1997. By now, appellant had another child, Bryan Stilson (d.o.b. 2/26/1997).
 {¶ 4} No further action was taken until July 2000, when appellee moved the court for protective supervision again alleging appellant failed to protect her children from abuse and neglect and had difficulty providing for their basic needs. In August 2000, the court found the children dependent once again. It ordered that appellant retain custody with protective supervision of four of the children and that appellee be granted temporary custody of Alyssa. A month later, appellee moved the court to grant it temporary custody of the other four children, alleging the Mahoning County Sheriff's Department had to remove the children from their home due to the extremely dirty and unsanitary conditions in the home. In October 2000, the court again placed the children in appellee's temporary custody, with appellant's consent. In June 2001, the court extended appellee's temporary custody.
 {¶ 5} On September 20, 2001, appellee moved for an order of permanent custody, alleging the children should not be placed with either parent and that permanent custody was in the children's best interests. Because of many continuances, several due to appellant's unhappiness with her court-appointed attorney, the motion was not ruled on until June 11, 2003, when the magistrate recommended that permanent custody be granted to appellee. During that time, the magistrate held numerous hearings and heard testimony from various witnesses on five different days. The magistrate then amended its decision on June 19, 2003, correcting the case caption. Appellant filed objections to the magistrate's decision. On July 16, 2003, the court overruled appellant's objections and adopted the magistrate's decision. However, at that time, the court had yet to review the transcripts of the proceedings before the magistrate. After the transcripts were filed, the court held a hearing on appellant's objections on October 2, 2003. In a December 9, 2003 judgment entry, the court overruled appellant's objections and affirmed the magistrate's decision. The court filed an amended judgment entry on December 17, 2003, although it is identical to the December 9th judgment except for a correction of the case number. Appellant filed her notice of appeal on January 7, 2004.
 {¶ 6} Appellant raises three assignments of error, the first of which states:
 {¶ 7} "The court abused its discretion granting the agency permanent custody in that it failed to comply with Section2151.414 by way of its findings and in that there WAS NO CLEAR AND CONVINCING EVIDENCE THAT ANY OF THE CRITERIA in division (e) of Section 2151.141 [SIC.] was in fact met."
 {¶ 8} Appellant contends that the court did not have clear and convincing evidence before it that any of the R.C.2151.141(E) factors applied to this case. She asserts the evidence demonstrated that she has complied with her case plan. She points out that Monique Phifer, the family's caseworker, testified as much. (2/4/2003 Tr. 1-3, 13-14, 33). She also points out that her counselors' testimony was favorable to her. And appellant notes that appellee's other witnesses had not had contact with her for some time. Thus, they could not provide any relevant insight.
 {¶ 9} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990),52 Ohio St.3d 155, 157, citing Stanley v. Illinois (1972),405 U.S. 645, 651. However, this right is not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 10} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion.Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 12} Pursuant to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 13} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 14} "* * *
 {¶ 15} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
 {¶ 16} Thus, before it can grant permanent custody of a child to a children services agency, the court must evaluate the child's best interest using the factors set out in R.C.2151.414(D) and determine whether the child cannot or should not be placed with either parent within a reasonable time using the factors set out in R.C. 2151.414(E).
 {¶ 17} The one R.C. 2151.414(E) factor that may apply in this matter is R.C. 2151.414(E)(2), which is:
 {¶ 18} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code."
 {¶ 19} Neither the trial court nor the magistrate made a finding regarding R.C. 2151.414(E)(2) or any of the other R.C.2151.414(E) factors.
 {¶ 20} But a court may also grant permanent custody to a children services agency pursuant to R.C. 2151.414(B)(1), which provides:
 {¶ 21} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 22} "* * *
 {¶ 23} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 24} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 25} Furthermore, R.C. 2151.413(D)(1) provides that, "if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *, the agency with custody shall file a motion requesting permanent custody of the child."
 {¶ 26} The court adjudicated all of the children dependent. Additionally, at the time of the final hearing, all of the children had been in appellee's temporary custody for more than 12 months of a consecutive 22-month period. Alyssa was most recently adjudicated dependent and placed in appellee's temporary care on August 3, 2000. The other children were adjudicated dependent on August 3, 2000, placed in appellee's emergency custody on September 20, 2000, and placed in appellee's temporary custody on October 31, 2000. They have been in appellee's custody since that time, well in excess of the 12 months out of a 22-consecutive month period requirement. Thus, appellee was required to file a motion requesting their permanent custody.
 {¶ 27} Therefore, the trial court met the first part of the two part-test for granting permanent custody to appellee. Accordingly, appellant's first assignment of error is without merit. If the evidence demonstrated that it was in the children's best interests for their permanent custody to be granted to appellee, R.C. 2151.414(B)(1) was met and we will uphold the permanent custody determination. Appellant's next assignment of error addresses the children's best interests.
 {¶ 28} Appellant's second assignment of error states:
 {¶ 29} "The court abused its discretion granting the agency permanent custody in that it failed to find by clear and convincing evidence that permanent custody to the agency is the best interest of each of the five children in this case."
 {¶ 30} Appellant argues that the best interests of the children will not be served by granting appellee permanent custody. She points to her counselors' testimony for support.
 {¶ 31} Both R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1) require the court to find that permanent custody to the agency would be in the child's best interest before granting the children services agency permanent custody. R.C. 2151.414(D) provides factors the court is to consider in determining the child's best interest. They include, but are not limited to:
 {¶ 32} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 33} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 34} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 35} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 36} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 37} Most of the testimony adduced at the hearings had to do with appellant. Thus, not much evidence exists on the record regarding the children's interaction and interrelationship with their parents, siblings, relatives, and foster caregivers. Monique Phifer, the caseworker, testified that appellant visits the children regularly and that it was apparent to her that appellant loved her children. (2/4/2003 Tr. 18). She also stated that the children love their mother. (2/4/2003 Tr. 53).
 {¶ 38} As is the case with the first factor, not much evidence exists on the record regarding the second factor, the children's wishes. However, Ms. Phifer did testify that the children wanted to go home. (2/4/2003 Tr. 53). Vince Paloucci, Richard's therapist, also testified that Richard has indicated that he wants to go home. (4/9/2002 Tr. 22). But Meg Harris, Justin's counselor, testified that Justin has told her he does not feel safe at home. (4/9/2002 Tr. 65).
 {¶ 39} The children's custodial history was outlined above. They have spent much of their lives in and out of appellee's temporary custody. Additionally, when they have been in appellant's care, appellee has maintained a relationship of protective supervision. The children's father is nowhere to be found. The court, appellee, and the father's attorney have attempted to contact him to no avail.
 {¶ 40} The children's need for a legally secure placement is the next factor. Once again, not much evidence was adduced as to this factor. Ms. Phifer testified that while it might be difficult, she believed that the children were adoptable as a family. (2/4/2003 Tr. 20, 53-54). She also testified that she did not believe the children could be reunited with appellant in the near future. (2/4/2003 Tr. 19). And she testified that she has looked into placing the children with relatives and questioned appellant about it, but could not find a relative who was able to take the children. (2/4/2003 Tr. 19).
 {¶ 41} None of the factors in R.C. 2151.414(E)(7) through (11) apply to this family.
 {¶ 42} In addition to these best interest factors, the evidence reveals the following.
 {¶ 43} At the parties' request, Dr. Charles Thorne examined appellant and reviewed the records in this case. He testified that appellant has two diagnoses: schizo-affective disorder and borderline personality disorder. (4/1/2003 Tr. 11). He also stated that appellant was taking numerous medications for her conditions including Risperdal, for auditory hallucinations; Trazodone and Depakote, as mood stabilizers; Celexa, for depression; and other medications. (4/1/2003 Tr. 13). He stated that there are no cures for appellant's conditions, just management, and that her prognosis is fair to poor. (4/1/2003 Tr. 17). Dr. Thorne also testified that he was aware that appellant has had suicidal and homicidal impulses. (4/1/2003 Tr. 24-25).
 {¶ 44} Additionally, Dr. Thorne testified that the loss of her children would tend to make someone with appellant's disorder more depressed. (4/1/2003 Tr. 25). He testified that if the court returned the children to appellant, it could have a positive effect on her. However, it could also have a negative effect because of added frustration and stress. (4/1/2003 Tr. 26).
 {¶ 45} Monique Phifer, appellant's caseworker, testified extensively. She stated that when appellee took temporary custody in 2000 it was because of environmental neglect, sexual abuse, and health problems. (2/4/2003 Tr. 10). The environmental neglect was due to things like dirty dishes, roaches in the home, and clothes strewn everywhere. (2/4/2003 Tr. 10). She stated that a case plan was implemented for appellant consisting of several goals including, providing safe and stable housing, mental health counseling, and meeting the children's basic and psychological needs. (2/4/2003 Tr. 13). She testified that appellant met the counseling aspect of the case plan. (2/4/2003 Tr. 13). She also testified that when she left appellee's employment in November 2002, appellant had a home with beds and her only concern with the home was appellant's various roommates. (2/4/2003 Tr. 13). Ms. Phifer testified that when the children were with appellant, she was very dependent on children services for things like transportation. (2/4/2003 tr. 14). As to appellant's mental health, Ms Phifer testified that appellant was hospitalized at least ten times between September 2000 and April 2002 for mental health issues. (2/4/2003 Tr. 14).
 {¶ 46} Ms. Phifer also testified regarding the children's special needs. Richard is in counseling, has ADHD, is borderline mentally retarded, and takes various medications. (2/4/2003 Tr. 16-17). Alyssa had been in counseling until November 2002, also has ADHD, and takes medication. (2/4/2003 Tr. 17). Justin is on medication and in counseling. (2/4/2003 Tr. 17). And Brian acts out and recently began counseling. (2/4/2003 Tr. 17).
 {¶ 47} As to appellant's relationship with the children, Ms. Phifer testified that appellant visited them regularly. (2/4/2003 Tr. 18). She stated that she has never had any concern about appellant's love and affection for the children. (2/4/2003 Tr. 18). But that she was concerned with times when appellant would visit the children in a "zombie-like" state and was unable to interact with them. (2/4/2003 Tr. 18). She did state, however, that she noticed an improvement with appellant being more alert towards the end of summer in 2002. (2/4/2003 Tr. 43).
 {¶ 48} Ms. Phifer opined that the children could not be reunited with appellant in the near future. (2/4/2003 Tr. 19). She based her opinion on appellant's mental health issues and the children's problems. (2/4/2003 Tr. 19). She stated that even if the children did not have problems, she did not think appellant could parent them. (2/4/2003 Tr. 19). Ms. Phifer thought that in order to give the children a better start in life they needed good parenting, which appellant could not provide. (2/4/2003 Tr. 19). Additionally, she believed appellant could not overcome her mental health problems any time in the near future and did not think the children should continue to sit in foster care for years waiting for appellant to get her mental health together. (2/4/2003 Tr. 53).
 {¶ 49} Jeanne Allen, the children's guardian ad litem, testified briefly. She stated she has been very involved with the children and has observed appellant with them at her visits. (4/1/2003 Tr. 106). She submitted a report recommending that the court grant permanent custody to appellee. In her report, Ms. Allen noted the following. Appellant is mentally unstable and has attempted suicide numerous times. In 2001, appellant spent 15 days in jail and was put on two years probation for animal cruelty. Appellant claims to love her children but is unable to parent them. Reports have substantiated Richard Stilson's sexual abuse of all of the children except Bryan. Once the children were placed in foster care, they had to learn how to bathe themselves, brush their teeth, and take care of their clothes. They are doing well in foster care but are behind developmentally due to the problems they had while living with their parents.
 {¶ 50} Richard's therapist, Vince Paloucci, testified also. He stated that he had been the case manager for the children at DE Counseling Center and knew all of the children and appellant. (4/9/2002 Tr. 16). Paloucci testified that Richard had behavior management and family transition issues as well as some developmental handicaps. (4/9/2002 Tr. 17-18). He further testified that there have been safety issues in appellant's home. (4/9/2002 Tr. 20). Specifically, he stated that appellant had problems monitoring the children's medications and had once confessed to using Richard's medications. (4/9/2002 Tr. 20). However, Paloucci stated that he had not had any contact with appellant for the past year and a half. (4/9/2002 Tr. 28).
 {¶ 51} Theresa Blazo, a case manager at DE Counseling Center, testified regarding her experience with the family. She has worked with three of the children and appellant on issues involving getting the children to school, getting their medication correct, and social behaviors. (4/9/2002 Tr. 37, 39). She stated that when the children resided with appellant she had concerns about eight dogs living in the house with feces lying around the home. (4/9/2002 Tr. 39-40). Ms. Blazo also testified that appellant had confessed to her that she took her children's Ritalin and Adderall. (4/9/2002 Tr. 40). Next, she testified that appellant called her at least three times a day for assistance with some sort of crisis, e.g., Richard would not go to school, the children would act out sexually. (4/9/2002 Tr. 43). She stated appellant had a difficult time getting the children to go to school. (4/9/2002 Tr. 43). While she still has contact with the children, Ms. Blazo has not had contact with appellant since September 2000. (4/9/2002 Tr. 47).
 {¶ 52} Additionally, Meg Harris testified. She had previously counseled Christen and Alyssa and still counseled Justin. She also worked with appellant. Ms. Harris stated that Justin was currently functioning very well in school and in his foster home. (4/9/2002 Tr. 58). She stated that she had concerns about the children's safety in appellant's home. She testified that when she was Alyssa's therapist, Alyssa was admitted to the crisis center for attempting to hang herself and harming animals in the home, specifically strangling kittens. (4/9/2002 Tr. 60, 63). Ms. Harris also indicated she had concerns about 15- and 16-year-olds babysitting all five of the children. (4/9/2002 Tr. 60). And she had concerns about the children having appropriate food and heat. (4/9/2002 Tr. 60-61). As to Justin, Ms. Harris testified that he has pervasive developmental disability, which is a form of autism. (4/9/2002 Tr. 62). As to Alyssa, Ms. Harris stated that she has ADHD and depression. (4/9/2002 Tr. 62). Ms. Harris had not had contact with appellant for the past year and a half. (4/9/2002 Tr. 71).
 {¶ 53} It is interesting to note that appellant did not testify in this case. Appellant's various therapists and counselors testified on her behalf.
 {¶ 54} Beth Levine, appellant's caseworker at Parkview Counseling, testified. She stated that her goals with appellant were to help appellant keep her doctors' appointments, take her medications, maintain herself in the community, work on coping skills, and work on how to budget and maintain a household. (2/4/2003 Tr. 63). Ms. Levine stated that appellant attended counseling faithfully. (2/4/2003 Tr. 62). Regarding appellant's medications, Ms. Levine opined that the medications appellant was taking currently seemed to be working well for her. (2/4/2003 Tr. 65). She also thought that appellant had made progress in several areas. For instance, Ms. Levine stated that appellant was able to obtain housing on her own. (2/4/2003 Tr. 67-68). Additionally, she stated that appellant had been able to maintain her own utilities, food, and medical card. (2/4/2003 Tr. 68). She opined that the children could return to appellant's care if appellant had support and all remained in counseling. (2/4/2003 Tr. 70). Ms. Levine based her opinion on the fact that appellant had been able to support herself in the community with little help from her and from the distress she had seen from appellant when her children were not with her. (2/4/2003 Tr. 70).
 {¶ 55} Christine Flak, appellant's therapist at Parkview Counseling, testified that she had been seeing appellant since March 2001. (4/1/2003 Tr. 38). She testified that appellant had been making slow but steady progress with her therapy. (4/1/2003 Tr. 55, 62). She stated that they have worked on keeping appellant out of the hospital. (4/1/2003 Tr. 55-56). She also testified that appellant had been doing a good job of managing her disorders and should be able to improve further. (4/1/2003 Tr. 58, 62). Ms. Flak testified that appellant had been thinking more clearly and logically. (4/1/2003 Tr. 60). Finally, Ms. Flak opined that appellant would be able to have one of her children returned to her now. (4/1/2003 Tr. 62-63).
 {¶ 56} Ruby Grover, appellant's SAMI counselor, also testified. She stated that she had been working with appellant for two years and in that time appellant had made a lot of progress. (4/1/2003 Tr. 70-71). Ms. Grover testified that some of her main goals with appellant were to help her become independent, take care of her hygiene, and stay away from drugs and alcohol. (4/1/2003 Tr. 71). She testified that appellant had remained sober throughout her counseling. (4/1/2003 Tr. 71). Ms. Grover opined that appellant is capable of having at least one of her children home with her. (4/1/2003 Tr. 77). She testified that having her children home with her would make appellant less depressed. (4/1/2003 Tr. 77-78).
 {¶ 57} Michael Ryhal, appellant's SAMI case manager for the past two and a half years, testified next. He stated that he has provided services to her regarding food assistance, housing, financial counseling, doctors, and overseeing her daily life. (4/1/2003 Tr. 88). He stated that appellant has progressed positively since he met her and her needs for his services have decreased. (4/1/2003 Tr. 92-93).
 {¶ 58} We must affirm the trial court's decision as long as it did not abuse its discretion in finding clear and convincing evidence existed to grant custody to appellee. Sims, 7th Dist. No. 02-JE-2, at ¶ 36. While appellant's counselors seem to paint a positive picture of her, it is important to point out that they have never met any of the children and have never seen appellant interact with the children. (2/4/2003 Tr. 74, 76; 4/1/2003 Tr. 81, 94). Appellee's witnesses, however, know both appellant and the children and have seen appellant's interaction with the children. Some of appellee's witnesses, however, have not had recent contact with appellant, so appellant may have improved since these witnesses' last contact with her. Importantly, the two people who have had the most contact with both appellant and the children, Ms. Phifer and Ms. Allen, both recommended that the court grant permanent custody to appellee. While appellant may be improving her life, as her counselors suggested, the key issue in this case is the children's best interests. At the time of this opinion, these children will have been in appellee's temporary custody for over three and a half years. As Ms. Phifer noted, it cannot be in their best interest to wait in foster care while appellant attempts to get her life together. Thus, we cannot say that the trial court acted arbitrarily, unconscionably, or unreasonably in granting permanent custody to appellee.
 {¶ 59} Hence, appellant's second assignment of error is without merit.
 {¶ 60} Appellant's third assignment of error states:
 {¶ 61} "The court's decision to grant the county agency permanent custody of the five minor children violated the equal protection rights of the appellant-mother who is a mentally disabled person."
 {¶ 62} Appellant argues that if the court's decision to grant appellee permanent custody was based on her mental illness, then its decision violated her civil rights for denying a mentally handicapped person equal protection. Appellant cites no case law to support her position.
 {¶ 63} R.C. 2151.414(E) specifically provides that when determining whether a child should be placed in a children's services agency's permanent custody, the court shall determine if certain circumstance exist as to each of the child's parents. If the court finds that one or more of the enumerated circumstances exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). One of these enumerated circumstances is:
 {¶ 64} "Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *." R.C. 2151.414(E)(2).
 {¶ 65} Appellant does not argue that this statute is unconstitutional.
 {¶ 66} Additionally, even if the trial court finds that because of a parent's mental illness, the child cannot or should not be placed with the parent within a reasonable time, it still may not award permanent custody to the agency unless it also finds that to do so would be in the child's best interest. Thus, the court could not simply award appellee custody of the children because of appellant's mental illness. It had to find that it was in the children's best interest to award their permanent custody to appellee.
 {¶ 67} Furthermore, in this case the court found that the children had been in appellee's temporary custody for at least 12 months of a consecutive 22-month period. This finding, coupled with finding the children's best interests would be served by granting permanent custody to appellee, was the basis for the court's decision. Thus, while appellant's mental health certainly was a factor in the court's decision, it was not the entire basis for the court's decision. And appellant's mental health would need to be considered when determining the children's best interest and whether appellant could adequately care for them.
 {¶ 68} Accordingly, appellant's third assignment of error is without merit.
 {¶ 69} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] Richard Stilson is not a party to this appeal.